**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
ABIGAIL ALLIANCE FOR BETTER ACCESS  )
     TO DEVELOPMENTAL DRUGS,         )
                                     )
     and                             )
                                     )
WASHINGTON LEGAL FOUNDATION,         )
                                     )
          Plaintiffs,                )
                                     )
     v.                              )  Case No. 1:03cv01601 (RMU)
                                     )
MARK B. McCLELLAN, M.D., in his      )
 official capacity as Commissioner,  )
 Food and Drug Administration,       )
                                     )
     and                             )
                                     )
TOMMY G. THOMPSON, in his official   )
 capacity as Secretary, U.S. Dept.   )
 of Health and Human Services,       )
                                     )
          Defendants.                )
_____)
```

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT</u>**

Defendants state that "plaintiffs are asking the Court to create a new fundamental right, a practice that the D.C. Circuit has admonished against." Defendants' Reply Mem. at 6. It is here that the legal dispute in this litigation has been joined. Far from asking this Court to "create" a "new" fundamental right, Plaintiffs seek the recognition and enforcement of a right that is explicitly stated

1

on the face of the Due Process Clause. Indeed, despite the strict-constructionist tenor of Defendants' reply, Defendants never quote the constitutional provision that they purport to be construing: the Fifth Amendment guarantee that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." This guarantee is patently violated by federal policies that ban dying patients with no other treatment options from making the choice to attempt to save their lives by purchasing investigational drugs -- drugs that the FDA itself has deemed fit for administration to human subjects in clinical trials.

Moreover, while Defendants quote former Judge Bork's opinion for the panel in Dronenburg v. Zech, 714 F.2d 1388, 1396 (D.C. Cir. 1984), for the proposition that this Court must reject "new" constitutional claims, Defendants do not include Judge Bork's explication: "The only questions open for us are whether the Supreme Court has created a right which, fairly defined, covers the case before us or whether the Supreme Court has defined a mode of analysis, a methodology, which, honestly applied, reaches the case we must now decide." 714 F.2d at 1396 n. 5. For the reasons set out in Plaintiffs' opposition, and as further discussed below, the U.S. Supreme Court's cases on the right to privacy and liberty amply define "a mode of analysis" to support Plaintiffs' claims.

ARGUMENT

I.   PLAINTIFFS HAVE PRESENTED A VALID CONSTITUTIONAL CLAIM

Defendants' Reply Memorandum principally relies on Smith v. Shalala, 954 F. Supp. 1 (D.D.C. 1996), and Garlic v. United States, 783 F. Supp. 4 (D.D.C. 1992). See Defendants' Reply Mem. at 3-5. While the opinions in those cases do not represent binding precedent in this Court,[1] Plaintiffs have fully addressed those cases in their opposition. See Plaintiffs' Opp. at 4-6.

With regard to Smith, defendants maintain that "there is nothing in plaintiffs' argument that explains, as a matter of constitutional theory, why a plaintiff who claims that he has no treatment options has a fundamental right to IND drugs, while a patient who has refused chemotherapy has no such right." Defendants' Reply Mem. at 3. But as explained in the Complaint, it is those patients "who have exhausted other treatment options" for whom current FDA policies have "life-or-death consequences." Complaint ¶¶ 13-14. To be sure, a patient who has alternative treatment options still suffers an incursion into his liberty and privacy interests when denied access to an investigational drug. Nonetheless, the magnitude of the potential consequences -- unique in their finality[2] -- sets apart the burden placed by FDA policies upon the constitutionally-protected interests of patients without approved options.

---

1 See In Re Korean Air Lines Disaster of September 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987), aff'd sub nom. Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989).
2 See Monge v. California, 524 U.S. 721, 732 (1988).

Defendants argue that cases dealing with access to unapproved drugs such as Laetrile, for which no IND has been granted, and cannabis, which is banned outright by statute, are applicable here because "investigational drugs are not different from unapproved drugs; they are a subset of unapproved drugs." Defendants' Reply Mem. at 5. Plaintiffs agree that investigational drugs are a subset of the much broader category of unapproved drugs. That is exactly the point. As noted in Plaintiffs' opposition, once the FDA has granted IND status to a new medicine, the FDA itself has allowed the drug to be administered to human patients for investigational purposes. See Plaintiffs' Opp. at 3-4.

Clinical trials have strict entry protocols because the statistics generated from the trials must compare apples and apples. The patients who Defendants claim to be protecting are, in fact, simply those patients who are unable to qualify for clinical trials under those protocols -- because they are too young or too old, because their disease is too far advanced, because they have tried another therapy, or because their condition does not permit them to travel to a distant location for the trial. Other patients "protected" by the policies are those who could not participate because demand for places in the trial far outstripped the supply. See generally Complaint ¶¶ 19-25 (case studies of Abigail Burroughs, David Baxter, Alita Randazzo, and Joel Oppenheim). What Plaintiffs are disputing, therefore, is not the medical line that the FDA has drawn in assessing

4

the safety and potential efficacy of the drug; it is the wall that the FDA has built to exclude patients who cannot take part in the trials.

Defendants argue that the Supreme Court's recognition of a right of competent patients to choose death in Washington v. Glucksberg, 521 U.S. 702, 723 (1997), and in Cruzan v. Director, 497 U.S. 261, 279 (1990), has no bearing on the existence of a right of those same patients to choose life. See Defendants' Reply Mem. at 5. Yet the two are opposite sides of the same coin: The very choice that the Supreme Court recognized as "a deeply personal decision of obvious and overwhelming finality" was that "between life and death." 497 U.S. at 281.[3] As noted in Plaintiffs' opposition,[4] the view that the right of patients to make such choices cannot stand against governmental authority to regulate drugs is answered by Griswold v. Connecticut, 381 U.S. 479 (1965), in which the Supreme Court struck down a state's regulation of devices and drugs based on the right to privacy -- a case that Defendants do not even attempt to distinguish.

Defendants state that Plaintiffs "do not object" to existing programs for "expanded access" to IND drugs. Defendants' Reply Mem. at 2. Nothing could be further from the truth. Existing programs for access to investigational drugs are extremely limited in scale

---

3 In any event, surely it is "self-evident" that all people "are endowed by their Creator with certain unalienable Rights," and that "among these are Life, Liberty and the pursuit of Happiness." U.S. Decl. of Independence.
4 See Plaintiffs' Opp. at 7-8.

and are unavailable to most dying patients. As explained in the Complaint, the programs accommodate only a small number of patients in those cases where they are even offered -- inevitably so, given that when the FDA permits such programs at all, it permits them only on the condition that the drug's sponsor provide the drug at no cost or on a cost recovery basis only. See Complaint ¶ 15; 21 C.F.R. § 312.7(d)(3). In Defendants' view, apparently, even though the government is without power under Griswold to ban contraceptive drugs and devices, it is free to effectuate the same result by prohibiting the provision of them at a profit. To the extent Defendants are relying on the existence of these programs to rebut Plaintiffs' constitutional claims, the scale and availability of these programs is a classic issue of fact and must be the subject of discovery prior to the resolution of Defendants' motion for summary judgment.

Contrary to Defendants' reply, Plaintiffs' claim involves no "presumption" that "all IND drugs will be beneficial (and not harmful) for the patients." Defendants' Reply Mem. at 9. It is not even true that all drugs receiving full marketing approval from the FDA will be beneficial and harmless to every individual patient. At issue is the liberty of patients to make the personal and intimate decision to undertake such a risk in consultation with their physicians when the alternative is death.

## II. DEFENDANTS' OBJECTIONS TO PLAINTIFFS' LCvR 7(h) FILINGS ARE MERITLESS

Rule LCvR 7(h) of this Court requires that an opposition to a motion for summary judgment "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which includes references to the parts of the record relied on to support the statement." The Rule further provides, "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

With their opposition to Plaintiffs' cross-motion for summary judgment, Defendants filed a document styled as "Defendants' Response to Plaintiffs' Statement of Material Facts and Defendants' Statement of Genuine Issues" ("Defendants' Resp. to Plaintiffs' Stmt."). In this document, Defendants ask the Court to strike Plaintiffs' Statement of Material Facts as to Which There Is No Genuine Dispute. Defendants' objections to Plaintiffs' statement of material facts is without merit, however, and indeed, Defendants' submission is itself not in compliance with LCvR 7(h).

Plaintiffs' statement of material facts lists undisputed material facts according to the corresponding paragraph numbers in the Complaint. These undisputed material facts are thus properly

tied to a citation to the relevant part of the record.

It is true that under Federal Rule of Civil Procedure 56(e), "When a motion for summary judgment is made and supported as provided in this rule [with affidavits, depositions, or answers to interrogatories], an adverse party may not rest upon the mere allegations of the adverse party's pleadings. . . ." But Defendants' motion for summary judgment is supported by no such evidence -- only by unsworn, letter-to-the-editor type submissions that fail to meet the requirements of Rule 56(e) and which are not properly admissible in any event. See Asia North America Eastbound Rate Agreement v. Amsia Int'l Corp., 884 F. Supp. 5, 6 (D.D.C. 1995); Plaintiffs' Opp. at 9 n.4. The one sworn declaration submitted by Defendants, that of Catherine C. Lorraine, simply attests to the written communications between the FDA and Plaintiff Abigail Alliance and the FDA's receipt of two letters from outside groups; nothing in that declaration requires a response from Plaintiffs.[5]

Additionally, Defendants object to the inclusion of certain factual statements describing FDA regulatory requirements and processes. See Defendants' Resp. to Plaintiffs' Stmt. at 3. This is surprising given that Defendants' own statement of material facts includes a description of the asserted legal effect of FDA regulations concerning Citizen Petitions. See Defendants' Stmt. of Material Facts at 2-3. In any case, the nature and effect of FDA regulatory

---

[5] Clearly, the mere attachment of two unsworn letters to the Lorraine Declaration does not elevate those letters to the status of Rule 56(e) affidavits, depositions,

requirements and processes is central to the constitutional claims in this case and is properly included in Plaintiffs' statement of material facts.

Defendants state that they dispute the allegations in the Complaint regarding the desires of some terminally ill patients and the motives of drug companies, but argue that "these statements are not material to any issue to be decided by these motions." Defendants' Resp. to Plaintiffs' Stmt. at 3. Defendants also state that they "have insufficient information to either admit or deny the detailed information about the illnesses of certain individuals . . . and therefore deny," but add that "these allegations also are not material to any issue to be decided." Defendants' Resp. to Plaintiffs' Stmt. at 3. In truth, all of these statements are material to Plaintiffs' constitutional claims, and must be taken as conceded for purposes of Plaintiffs' cross-motion for summary judgment; LCvR 7(h) requires that Defendants provide "references to the parts of the record relied on," and Defendants have not done so.

---

or interrogatory answers.

Plaintiffs respectfully request a hearing on their cross-motion for summary judgment and on Defendants' motion to dismiss or in the alternative for summary judgment.

Respectfully submitted,

_____
Daniel J. Popeo
David A. Price
   (D.C. Bar No. 426022)
Richard A. Samp
   (D.C. Bar No. 367194)

WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave, N.W.
Washington, D.C.  20036
(202) 588-0302

Counsel for Plaintiffs

Dated: December 1, 2003